UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 14-9404-GW(JEMx) | Date | January 22, 2015 |
| Title | Cristina Hernandez v. Specialized Loan Servicing, LLC, et al. | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

Jesse J. Thaler   Robert Ramos Yap

**PROCEEDINGS:** **DEFENDANT SPECIALIZED LOAN SERVICING LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [10];**

**PLAINTIFF'S MOTION TO REMAND [9];**

**SCHEDULING CONFERENCE**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion is DENIED WITHOUT PREJUDICE. Defendant's Motion is GRANTED WITHOUT PREJUDICE. Plaintiff will have 14 days from the date of this order to file a First Amended Complaint.

The Court sets the following:

| | |
|---|---|
| Mediation cutoff | May 13, 2015 |
| Post-Mediation Status Conference | May 14, 2015 at 8:30 a.m. |
| Discovery cutoff | July 28, 2015 |
| Expert discovery cutoff | August 21, 2015 |
| Motion hearing cutoff | September 21, 2015 |
| Pretrial Conference | October 22, 2015 at 8:30 a.m. |
| Jury Trial | November 3, 2015 at 9:00 a.m. |

The parties are referred to ADR Procedure No. 2 - Court Mediation Panel.

**cc: ADR Program**

: 15

Initials of Preparer  JG

***Christina Hernandez v. Specialized Loan Servicing, LLC, et al.***; Case No. CV-14-9404-GW-(JEMx); Tentative Ruling on Plaintiff's Motion to Remand and Defendants' Motion to Dismiss

## I. Background

In October 2014, Christina Hernandez ("Hernandez") filed this mortgage modification/foreclosure action in state court against Specialized Loan Servicing, LLC ("SLS") and J.P. Morgan Chase Bank, N.A. ("Chase") (collectively, "Defendants"), alleging: (1) violation of Cal. Civ. Code § 2923.7; (2) violation of Cal. Civ. Code § 2924.17; (3) negligent misrepresentation; (4) breach of the implied covenant of good faith and fair dealing; (5) negligence; and (6) violation of Cal. Bus. & Prof. Code § 17200. *See* Docket No. 1, Ex. A, Complaint ("Compl.").[1] Shortly after being served, Defendants removed the case to this Court. *See* Removal Notice, Docket No. 1. The parties have since filed cross Motions to Dismiss ("Mot."), Docket No. 10, and Remand ("Remand Motion"), Docket No. 9.[2] For the reasons below, the Court would DENY the Remand Motion and GRANT-IN-PART and DENY-IN-PART the Motion to Dismiss.

## II. Legal Standard

### A. *Motion to Remand*

The right to remove a case to federal court is a creature of statute. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). Because "[i]t is presumed that a cause lies outside the limited jurisdiction of federal courts," *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (quotations omitted), and because the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F. 2d 564, 566-67 (9th Cir. 1992).

### B. *Rules 8(a)(2), 9(b) and 12(b)(6)*

Typically, plaintiffs in federal court need only give "a short and plain statement of the claim showing [entitlement] to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a complaint warrants dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may fail to state a claim for one of two reasons: (1) lack of a cognizable legal theory or (2) failure to allege sufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether a complaint survives this test, courts "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In so doing, courts must accept the complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). But a court should not accept "threadbare recitals of a cause of action's elements, supported by mere

---

[1] Hernandez voluntarily dropped her § 2924.17 claim after removal. *See* Opposition to Motion to Dismiss ("Opp."), Docket No. 15, at 1:12-13.

[2] Chase joined SLS's Motion to Dismiss. Docket No. 7.

conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Iqbal*, 556 U.S. at 678; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

While plaintiffs generally need only satisfy Rule 8's "short and plain" standard, allegations sounding in "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) include "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citations and quotations omitted); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity"). In addition, the allegations must identify "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false") (citations and quotations omitted)).

### III. Analysis
#### A. *Motion to Remand*

Defendants removed this case on complete diversity grounds. The general rules for diversity jurisdiction should be familiar. Diversity jurisdiction exists if the plaintiff has different citizenship from all defendants and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). For diversity removals, therefore, the removing defendant typically must show that the parties were completely diverse, both when the case was filed and removed, *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002), and that the amount in controversy exceeded $75,000 at the time of removal, *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003).

The Removal Notice establishes the requirements for diversity jurisdiction. Hernandez does not dispute that she is a California citizen. Nor does she dispute that SLS and Chase are citizens of Australia and Ohio, respectively. *See* Docket No. 1, Removal Notice ¶¶ 4-10; *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 708 (9th Cir. 2014). Further, it is undisputed that the value of the property for which Hernandez seeks a foreclosure-preventing injunction exceeds $75,000, whether measured by the value of the underlying debt or the value of the property. Compl., Ex. A at 2 of 15; Docket No. 4, Ex. 5 at 1 of 14; *id.*, Ex 6 at 2 of 7; *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation"); *Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039, 1045 & n.2 (9th Cir. 2011) ("Here, the object in litigation is the Property, which was assessed at a value of more than $200,000, and therefore satisfies the amount-in-controversy

requirement [based on plaintiff's request for quiet title (i.e., declaratory relief)]") (citing *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973) (treating entire value of real property as amount in controversy in action to enjoin foreclosure sale); *Woodside v. Ciceroni*, 93 F. 1, 4 (9th Cir.1899) ("In a suit to quiet title, or to remove a cloud therefrom, it is not the value of the defendant's claim which is the amount in controversy, but it is the whole of the real estate to which the claim extends")). In addition, at the time of removal, Hernandez sought $50,000 in statutory penalties for each of her § 2923.7 and § 2924.17 claims. *See* Compl. at 5:8, 7:17, 17:26-28; *see also* Cal Civ. Code § 2924.12(b) (providing $50,000 penalty for intentional or reckless violations of § 2923.7 or §2924.17). While Hernandez dropped the § 2924.17 claim after removal, removability is determined based on the allegations existing upon removal; a plaintiff cannot defeat removal based on post-removal amount-in-controversy reductions. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

The Court is sympathetic to the general argument that these types of cases belong in state court. But, where it exists, this Court has a "virtually unflagging obligation" to exercise jurisdiction, subject to narrow exceptions not applicable here. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Remand Motion is DENIED.

### B. *Motion to Dismiss*
#### 1. Incorporation-By-Reference Doctrine

Defendants refer throughout the Motion and Reply to correspondence SLS allegedly sent to Hernandez during the loan-modification process. Mot. at 6:6-21 (arguing that Hernandez's "entire pleading implicitly references" the "correspondence set forth as Exhibits '3' through '9,' '11,' and '13' through '19,'" and that it is therefore "subject to this Court's consideration").[3] Defendants argue that the Court can consider the correspondence under the incorporation-by-reference doctrine, which permits "a court [to] look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Specifically, the incorporation-by-reference doctrine allows a court to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). To qualify for incorporation by reference, the evidence must be "central" to the complaint. "Whether a document is 'central' to a complaint turns on whether the complaint 'necessarily relies' on that document." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). A complaint "necessarily relies" on extrinsic evidence where: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

Defendants make no effort to identify portions of the Complaint referring to the documents they seek to incorporate; that may be because they do not exist. The Complaint contends Defendants *failed* to send Hernandez correspondence; but the incorporation-by-reference doctrine requires that the Complaint refer to specific documents, not their absence. In essence, Defendants are trying to "incorporate" documents unmentioned in the Complaint in order to contradict Hernandez's

---

[3] Hernandez disputes that she received the documents Defendants seek to incorporate. Opp. at 4:22-5:23.

allegations with their own evidence. That they cannot do. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("While evidence outside the complaint [contradicts plaintiff's factual allegations], such extraneous evidence should not be considered in ruling on a motion to dismiss"). Indeed, even passing references to "correspondence" with Defendants would not be enough. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (refusing to consider document that was actually mentioned, but not referenced extensively or essential to plaintiff's claim) (citing 5 Wright & Miller, Federal Prac. and Proc. (2d ed. 1990) § 1327 (stating that the mere mention of the existence of a document is insufficient to incorporate the contents of a document by reference)); *see also* Schwarzer, Tashima, et al., Fed. Civ. Proc. Before Trial (2014) § 9:212.1a, at 9-82.1 ("Where the complaint merely alleges a 'contract' – not a specific document – the court may not consider documents that are not indisputably the basis for the alleged 'contract,' without converting the motion to summary judgment"). In addition, even if the Complaint referred to the correspondence Defendants seek to introduce, it neither relies on the correspondence, nor is the correspondence central to Hernandez's claims (other than as it supports Defendants' defenses).

The Court would thus reject Defendants' request that it consider Exhibits 3-9, 11, and 13-19.

### 2. Cal. Civ. Code § 2923.7

Civil Code § 2923.7 provides that, upon "request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). Among other things, that single point of contact is responsible for "[c]oordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application." *Id.* § 2923.7(b)(2). In addition, the "single point of contact" must have "access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative," and ensure "that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any." *Id.* §§ 2923.7(b)(3)-(4). Hernandez contends that Defendants violated these requirements.

Defendants argue that Hernandez's § 2923.7 claim fails for four reasons. *See* Mot. at 6:24-8:7. The Court disregards Defendants' first three reasons as they are based on evidence extrinsic to the Complaint. As for the fourth reason, Defendants cite *Rockridge Trust v. Wells Fargo NA*, No. 13-CV-1457-JCS, 2014 U.S. Dist. LEXIS 22234 (N.D. Cal. Feb. 19, 2014), arguing that the 2923.7 claim fails because Hernandez has not alleged actual economic damages, *see id.* at *78-*79 ("In order to properly allege a claim under section 2923.7, a plaintiff must allege that a violation of the provision was the cause of actual economic damages"). But, as the *Rockridge Trust* court recognized in an earlier order, economic damages are *not* required before a trustee's sale has been recorded. *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d 1110, 1148-49 (N.D. Cal. 2013) (citing and quoting Cal. Civ. Code § 2924.12(a)(1) ("If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of [§ 2923.7]")). Rather, before a foreclosure sale, borrowers may seek an injunction. *Williams v. Quality Loan Servs. Corp.*, No. 14-CV-2228-JCS, 2014 U.S. Dist. LEXIS 148041, at *24 (N.D. Cal. Oct. 17, 2014) ("In *Rockridge I*, the undersigned explained that the HBOR gives borrowers the right to seek not only injunctive relief *before* the foreclosure sale but also economic damages for violations of certain

provisions *after* the trustees' sale has occurred"); *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.App.4th 941, 951 (2014) ("To enforce the new requirements, the HBOR creates a private right of action allowing a borrower to seek injunctive relief to enjoin a material violation of the act prior to foreclosure and to assert a claim for damages for a violation of the act following foreclosure"); *see also, e.g., Rahbarian v. JP Morgan Chase*, No. 14-CV-1488-JAM(KJNx), 2014 U.S. Dist. LEXIS 158719, at *15 (E.D. Cal. Nov. 10, 2014) ("The Court holds therefore that Plaintiff need not plead harm to make a claim under section 2924.12(a) for a violation of section 2924.17. The plain language of section 2924.12(a) includes no such requirement and the Court declines to read one in.").

Here, as Defendants point out, although the foreclosure trustee has recorded a notice of default, Mot. at 3:8-10,[4] "no notice of sale . . . is alleged to have been recorded, and no trustee's sale . . . is alleged to have been conducted." Mot. at 3:26-27. Thus, Hernandez need not have suffered an economic loss to bring her § 2923.7 claim; she can seek injunctive relief. *Alvarez*, 228 Cal.App.4th at 951; *Gilmore v. Wells Fargo Bank N.A.*, ___F.Supp.3d___, No. 14-CV-2389-CW, 2014 U.S. Dist. LEXIS 173738, at *19 (N.D. Cal. Dec. 16, 2014). As Defendants emphasized when opposing the remand motion, the Complaint does seek injunctive relief. *See* Compl. at 18:6-7.

Thus, on the grounds presented, the Court would DENY the Motion as to the § 2923.7 claim.

### 3. Negligent Misrepresentation

Absent any countervailing argument, the Court assumes that the negligent-misrepresentation claim is subject to a heightened pleading standard. *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that . . . claims for . . . negligent misrepresentation must meet Rule 9(b)'s particularity requirements"); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1097-98 (C.D. Cal. 1999) (holding that Rule 9(b) applies to negligent-misrepresentation claims); *but see Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 415-16 (C.D. Cal. 2012) (holding that Rule 9(b) does not apply to negligent-misrepresentation claims). As outline above, Rule 9(b) requires a plaintiff to allege the who, what, when, where, and how of the misconduct charged. *Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged").

Here, the Complaint fails to allege negligent misrepresentation with the particularity required by Rule 9(b). The Opposition cites ¶¶ 50-58 as containing the negligent-misrepresentation allegations. *See* Opp. at 8:20-9:2. Those paragraphs contain nothing detailed about the who, what, when, and where of the alleged misrepresentation. Even reading in the general allegations, the Court does not them sufficient under Rule 9(b). While the Complaint identifies, in general terms, some calls between Hernandez and a third-party non-profit, on the one hand, and SLS representatives, on the other, it does not allege, specifically, who said what when, and how the statement was fraudulent. Indeed, while ¶ 50 alleges that the fraudulent misstatement was: "after [Hernandez] submitted a loan workout that SLS would review her application in good faith within the provisions of the HBOR," the Complaint does not ascribe that statement to anyone identified in the Complaint.

The Court would dismiss the negligent-misrepresentation claim WITHOUT PREJUDICE.

---

[4] The Court takes judicial notice of the Substitution of Trustee and Notice of Default (Exhibits 10 and 12) both of which are matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

### 4. Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants move to dismiss Hernandez's breach-of-implied-covenant claim on two grounds: (1) she has not alleged a breach of any enforceable contract, and (2) the alleged implied covenant that Defendants breached contradicts the express terms of the contract. *See* Mot. at 10:23-11:15. The implied-covenant allegations in the Complaint state:

> [¶ 61] Plaintiff alleges Defendant SLS breached the implied covenant of good faith and fair dealing within her loan contract.
> [¶ 62] Beyond the loan contract's express terms, Defendant also breached the implied covenant of good faith and fair dealing implicit within it . . .
> [¶ 63] Plaintiff . . . applied for a loan modification with SLS. Plaintiff submitted to Defendants all necessary documentation required for the loan modification. However, Defendants unfairly neglected Plaintiff's loan modification process with an untimely review. Defendant's neglect and failure to modify the loan terms interfered with their right to receive the benefits bargained for such under her loan contract.

Compl. ¶¶ 61-63.

In short, Hernandez appears to be alleging that Defendants (or just SLS) breached the implied covenant of good faith and fair dealing by failing to timely review her loan modification documents. However, the "implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App.4th 1026, 1031 (1993). It "is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988).[5] Here, Hernandez has not identified any express contractual provision giving rise to the duty of good faith and fair dealing that Defendants allegedly breached by not reviewing her loan documents.[6] Without an express contractual provision to protect, the implied duty has no function.

The Court DISMISSES this claim WITHOUT PREJUDICE.

---

[5] Contrary to Defendants' argument, a plaintiff can bring a claim for non-tortious breach of the implied covenant of good faith and fair dealing without also alleging a separate breach of contract. *Thrifty Payless, Inc. v. Americana at Brand, LLC*, 218 Cal.App.4th 1230, 1244 (2013) ("A breach of the implied covenant of good faith is a breach of the contract, and 'breach of a specific provision of the contract is not . . . necessary' to a claim for breach of the implied covenant of good faith and fair dealing") (quoting *Carma Developers*, 2 Cal.4th at 373 & n.12, and citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1393 (1990)).

[6] Moreover, while it is unclear at this point on what express contractual term Hernandez's implied-covenant claim is ostensibly based, Hernandez must be cognizant "that an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract." *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 55 (2002); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374 (1992). Thus, to the extent Hernandez seeks to pursue a breach-of-implied covenant claim that contradicts express terms in the contract – like the right to foreclose for non-payment – this claim may be in more serious trouble.

### 5. Negligence

To state a negligence claim, a plaintiff must allege: (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages. *See Pultz v. Holgerson*, 184 Cal.App.3d 1110, 1116-17 (1986). Thus, the "existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095 (1991). Whether a duty exists is a question of law. *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278 (2004) ("The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court").

The majority of "California courts hold that a loan servicer who offers to modify a borrower's loan does not owe that borrower a duty of care because 'its involvement in the loan transaction does not exceed the scope of its conventional role as a lender of money.'" *Deschaine v. IndyMac Mortg. Servs.*, 2014 U.S. Dist. LEXIS 8541, at *17 (E.D. Cal. Jan. 22, 2014) (citing *Nymark*, 231 Cal.App.3d at 1096 ("[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money")); *Settle*, 2012 U.S. Dist. LEXIS 4215, at *49-*50 ("Wachovia allegedly breached this duty 'by failing to diligently review plaintiffs' application and give plaintiffs reasonable time to make alternate arrangements to avoid foreclosure.' As discussed, in California, a lender owes no duty of care to the borrowers in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'") (citations and quotations omitted, punctuation altered)); *see also, e.g., Alvarado v. Aurora Loan Servs., LLC*, 2012 U.S. Dist. LEXIS 135637, at *16 (C.D. Cal. Sept. 20, 2012) ("Plaintiff's interpretation of loan modifications as outside the activities of a conventional money lender is inaccurate as numerous cases have characterized a loan modification as a traditional money lending activity") (citations and quotations omitted).

Hernandez cites *Jolley v. Chase Home Fin., LLC*, which, among other things, contained the oft-cited dicta: the "no-duty rule is only a general rule," and suggested that the duty question may be subject to a robust, fact-sensitive analysis. 213 Cal.App.4th 872, 897-906 (2013). Even assuming that *Jolley* is the appropriate authority, the duty analysis requires the plaintiff to demonstrate that the so-called *Biakanja* factors tilt toward imposing a duty of care. *See Jolley*, 213 Cal.App.4th at 899-901; *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.App.4th 941, 945 & n.6 (2014).

Here, the Complaint is devoid of allegations suggesting that the loan modification process was anything other than a normal, arm's-length negotiation. Indeed, rather than addressing the *Biakanja* factors, the Opposition simply states that "Plaintiff respectfully submits that she has pled sufficient facts to maintain causes of action for Negligence in the original Complaint." Opp. at 12:1-2. That is not good enough. The Court should thus DISMISS this claim WITHOUT PREJUDICE. If Hernandez chooses to amend, she should allege facts demonstrating why this is an unusual case in which Defendants owed her a duty during the modification process. Both parties should address whether the state appellate authority conflicts, and if so, which line of cases the Court would follow under *Erie*.[7] Assuming *Jolley* applies in some form, the parties should also address whether it and

---

[7] The *Erie* doctrine requires that federal courts exercising diversity jurisdiction over state-law claims apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518

its progeny are sufficiently similar on the facts to warrant imposing a duty.

### 6. Cal. Bus. & Prof. Code § 17200 ("UCL")

Defendants move to dismiss Hernandez's UCL claim on the grounds that she lacks standing. To establish statutory standing under the UCL, "a private plaintiff [must] have suffered 'injury in fact and lost money or property as a result of the unfair competition.'" *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting Cal. Bus. & Prof. Code § 17204) (punctuation altered). The UCL's standing provision thus requires a plaintiff to show that she "'lost money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, and also requires a 'causal connection' between [the defendant's] alleged UCL violation and her injury in fact." *Id.* at 1203-04 (citations omitted); *Hall v. Time Inc.*, 158 Cal.App.4th 847, 855 (2008) ("The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation").

---

U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law"). In ascertaining state law, federal courts must look to statutes and decisions from the state's highest court. *Erie*, 304 U.S. at 78. If the issues involved are ones upon which the state supreme court has not yet ruled, federal courts must attempt to predict how the state supreme court would rule on an issue. In so doing, federal courts may look to state supreme court dicta, the opinions of lower state courts, or, in some cases, opinions issued by courts in other jurisdictions. *See Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996) ("When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. [W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.") (citations and quotations omitted); *see also Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) ("Where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts") (citations and quotations omitted); *Tenneco W., Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir. 1985) ("State law includes the decisions of state courts. Where an intermediate appellate state court has decided an issue of state law, that decision is not to be disregarded by a federal court unless it is convinced that the highest court of the state would decide otherwise particularly where the highest court has refused to review the lower court's decision") (citations and quotations omitted, punctuation altered). Where state appellate courts split on an issue, the federal court must attempt to predict which position the state Supreme Court is more likely to adopt. *See DeWitt v. W. Pac. R. Co.*, 719 F.2d 1448, 1453 (9th Cir. 1983) (noting split in authority but choosing one line of California appellate cases over another). Ultimately, the net result is that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).

Here, the state appellate courts are split on the issue of whether, and if so when, a residential lender owes a common law duty of care to offer, consider, and approve a loan modification. *Compare, e.g., Alvarez*, 228 Cal.App. 4th at 945 *with Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 67 (2013); *see also, e.g., Banks v. JPMorgan Chase Bank, N.A.*, No. 14-CV-6429-JAK(FFMx), 2014 U.S. Dist. LEXIS 164565, at *32 (C.D. Cal. Nov. 19, 2014) (attempting to harmonize recent California appellate authority: "Taken together, these cases establish that traditional money-lending activity does not create a duty of care (*Nymark*), and that a loan modification is generally deemed a traditional money-lending activity (*Lueras*). They also support the conclusion that servicer conduct during the modification negotiation process may create a special relationship and a resulting duty of care (*Alvarez*)"). In later rounds of briefing, the parties should explain why – in the *Erie* context – one position is more favorable than the other. Alternatively, Defendants may seek to distinguish *Jolley* on its facts. The fact that two appellate courts sitting at the same level disagree, however, is not persuasive *vel non*.

Here, the Complaint alleges four types of harm: (1) "the undue delay [in modifying the loan] increased the amount owed"; (2) Hernandez spent time and resources providing documents to SLS; (3) Hernandez suffered derogatory credit ratings; and (4) the "property title is clouded." Compl. ¶ 84. Contrary to statements in the Opposition, the Complaint *does not* allege that Hernandez was charged "default fees and costs." Opp. at 13:8-9.[8]

The Court does not believe that either the first or fourth type of harm confer UCL standing – at least, not without the corresponding (truthful) allegation that Defendants told Hernandez to stop paying down her mortgage. Without this allegation, the thing that *caused* Hernandez's balance to increase or the title on her property to cloud under her then-existing mortgage was the failure to pay. *See Hall*, 158 Cal.App.4th at 855; *Schwartz v. Provident Life & Accident Ins. Co.*, 216 Cal.App.4th 607, 613 (2013). Further, while there is authority to the contrary, this Court does not believe that negative credit reporting, standing alone, can possibly constitute lost "money or property" sufficient to confer UCL standing. *See, e.g., Trujillo v. First Am. Registry, Inc.*, 157 Cal.App.4th 628, 639 (2007) (finding that negative credit reporting, standing alone, was insufficient to confer UCL standing); *Bankston v. AmeriCredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 2408, at *21 (N.D. Cal. Jan. 4, 2011) (finding that plaintiff could not establish UCL standing because she "failed to proffer any evidence that she suffered any actual loss of money or property as a result of [defendant's] alleged report to the credit bureaus"); *but see Rex v. Chase Home Fin. LLC*, 905 F.Supp.2d 1111, 1147 (C.D. Cal. 2012) ("[P]erpetration of credit reports containing inaccurate erroneous information regarding 'due and owing' debts is a sufficient injury to grant Plaintiffs standing under the UCL") (Carter, J.) (citing and quoting *White v. Trans Union, LLC*, 462 F.Supp.2d 1079, 1084 (C.D. Cal. 2006) (Carter, J.)) (punctuation altered). In addition, while Hernandez alleges she expended "time and resources" providing documents to SLS, that is not the same as alleging that she lost *money* or property *as a result of* Defendants' alleged unfair competition (the act of allegedly misleading Hernandez about her modification prospects). Finally, the Court rejects Hernandez's attempt to bootstrap the costs and fees of pursuing this case into UCL standing. If court costs and attorney's fees could satisfy the UCL standing requirement, then the standing requirement would be meaningless "because 'any plaintiff filing suit would be allowed to show injury.'" *Koller v. W. Bay Acquisitions, LLC*, No. 11-CV-117-CRB, 2012 U.S. Dist. LEXIS 49712, at *20-*21 (N.D. Cal. Apr. 9, 2012) (quoting *Selby v. Bank of Am., Inc.*, No. 09-CV-2079-BTM(JMAx), 2010 U.S. Dist. LEXIS 139966, at *24 (S.D. Cal. Oct. 27, 2010).

The Court would DISMISS the UCL claim WITHOUT PREJUDICE.

### IV. Conclusion

For the reasons above, the Court would DENY the Remand Motion. On the Motion to Dismiss, the Court should hold as follows:

(1) § 2923.7 – DENY;
(2) Negligent misrepresentation – GRANT WITHOUT PREJUDICE;
(3) Good faith and fair dealing – GRANT WITHOUT PREJUDICE;

---

[8] The closest it comes is when it alleges: "Defendants represented to Plaintiff per her conversation with their agents that they would review her application in a timely manner so that Plaintiff may avoid default of her loan, incur late fees and potential loss of her property." Compl. ¶ 51.

(4) Negligence – GRANT WITHOUT PREJUDICE;
(5) § 17200 – GRANT WITHOUT PREJUDICE.

Should she choose to amend, Hernandez shall file an amended pleading within 14 days of this hearing. If she elects not to amend, Hernandez shall inform Defendants within 5 days of this hearing, and they shall answer within 14 days of receiving notification from Hernandez.

As a final note, it appears that SLS may be willing to work with Hernandez to modify the loan. Docket No. 11, Ex. 16 (post-filing e-mail from Defendants' counsel to Hernandez's counsel requesting documents to facilitate mortgage modification). If this option remains open, the Court *strongly* encourages the parties to revisit it; it may save everyone a lot of time, money, and peace of mind.